UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSHUA L.,[1]

                         Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

DECISION AND ORDER

1:24-cv-00048-MAV

---

## INTRODUCTION

On January 11, 2024, Joshua Gerald L. ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 4 (Plaintiff); ECF No. 6 (Commissioner). For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 4] is denied. The Commissioner's motion [ECF No. 6] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed his application for DIB on July 30, 2021, alleging a disability onset date of July 26, 2021. Administrative Record ("AR") at 17,[2] ECF No. 3. Plaintiff's claims were initially denied on November 19, 2021, and upon reconsideration on February 11, 2022. AR at 17.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his applications at the initial level and on reconsideration, Plaintiff appeared for a telephone hearing on January 11, 2023, before an Administrative Law Judge ("ALJ"). AR at 44. At the hearing, Plaintiff testified that he was a veteran of the United States Air Force and Marine Corps and of the New York State Air National Guard. AR at 53. He medically retired from service in January 2021. AR at 53. Plaintiff testified that he has been unable to work since July 2021 due to Post-Traumatic Stress Disorder ("PTSD") and reconstruction of both ankles, which led to additional issues, including pain in both ankles, knees, lower back, shoulders, arms, wrists, both hands, and thumbs, as well as numbness in his fingers and neck. AR at 57–58, 70.

After the hearing, Plaintiff submitted additional medical evidence into the record and, as a result, the ALJ obtained a post-hearing written interrogatory from the vocational expert ("VE"). AR at 17. The post-hearing VE interrogatory was

---

[2] The page references from the transcript are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

2

proffered to Plaintiff, and Plaintiff requested a supplemental hearing for cross-examination of the VE, which the ALJ granted. AR at 17. The supplemental hearing was held via telephone on July 11, 2023. AR at 17.

## III. The ALJ's Decision

On October 4, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 18, 28.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2026. AR at 19. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of July 26, 2021. AR at 20.

At step two, the ALJ determined that Plaintiff had the following severe

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of impairments;
> (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

impairments: bilateral ankle fractures, status-post surgical repair of the left ankle and reconstructive surgery of the right ankle, and degenerative disc disease of the lumbar spine.[5] AR at 20. The ALJ found Plaintiff's other physical impairments to be non-severe, such as: degenerative joint disease of the hands, status post left wrist debridement, and wrist disorder. AR at 20. The ALJ also found the following non-severe mental impairments: depressive disorder, anxiety disorder, and PTSD. AR at 20. In making this finding, the ALJ assessed whether Plaintiff's mental impairments satisfied the "Paragraph B" criteria[6] and concluded that Plaintiff had a mild limitation with "understanding, remembering, or applying information;" no limitation with "interacting with others"; a mild limitation with "concentrating, persisting, or maintaining pace"; and a mild limitation with "adapting or managing oneself." AR at 20–21. Because Plaintiff's medically determinable mental

---

[5] Under 20 C.F.R. § 404.1521, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."

[6] When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." See 20 C.F.R. § 416.920a; see Nedzad O. v. Comm'r of Soc. Sec., 577 F. Supp. 3d 37, 44 (N.D.N.Y. 2021). This technique requires the ALJ to determine first whether the claimant has a "medically determinable mental impairment." Nedzad O., 577 F. Supp. 3d at 44.

    If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. See 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.00(E)(1)-(4); see also Nedzad O., 577 F. Supp. 3d at 44.

    Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," see 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," see id. §§ 404.1520a(d)(1), 416.920a(d). "To satisfy the 'Paragraph B' criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria." Monica L. v. Comm'r of Soc. Sec., No. 19-cv-1435, 2021 WL 630909, at *4 (W.D.N.Y. Feb. 18, 2021).

impairments did not cause at least two "marked" limitations or one "extreme" limitation, the ALJ determined that the "Paragraph B" criteria were not satisfied. AR at 22.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 22.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity[7] ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), explaining:

> he can lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Although the claimant cannot climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.

AR at 22.

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a computer security specialist. AR at 26. The ALJ accepted the VE's testimony that Plaintiff's description of a computer security specialist was consistent with the job of computer security specialist (DOT#033.362-010), which was performed at a sedentary exertional level, and the demands of which did not exceed Plaintiff's RFC. AR at 26–27.

As an alternative finding, the ALJ concluded that considering Plaintiff's age,

---

[7] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

education, work experience, and RFC, as well as the testimony of the VE, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as: garment folder, bagger of laundry, and photocopy machine operator. AR at 27–28. Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act. AR at 28.

On November 15, 2023, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for disability benefits has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing."

"The entire thrust of judicial review under the disability benefits law is to

ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks and citation

omitted).

## DISCUSSION

In Plaintiff's motion for judgment on the pleadings, he argues that the ALJ did not properly consider his non-severe hand and wrist impairments when formulating his RFC, ECF No. 4-1 at 9–15; that the ALJ improperly formulated his RFC based on the ALJ's lay interpretation of the evidence, *id.* at 15–20; that the ALJ failed to perform a function-by-function analysis after rejecting the medical opinion evidence, *id.* at 20–23; and that the ALJ improperly rejected Plaintiff's functional capacity evaluation when assessing Plaintiff's RFC, *id.* at 23–26.

The Commissioner responds that the ALJ properly considered Plaintiff's non-severe hand and wrist impairments in formulating Plaintiff's RFC, ECF No. 6-1 at 6–10, and that the ALJ's RFC determination is supported by substantial evidence, *id.* at 10–17.

Having carefully reviewed the parties' papers and the relevant sections of the administrative record, the Court finds that Plaintiff's arguments lack merit, and therefore that his motion should be denied, and the Commissioner's motion granted.

**I. Assessment of Plaintiff's non-severe impairments in RFC Determination**

Pursuant to 20 C.F.R. § 404.1545(a)(2), an ALJ must consider all of a claimant's medically determinable impairments, including medically determinable impairments that are not severe, when assessing a claimant's RFC. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) ("[An] RFC determination must account for limitations imposed by both severe and nonsevere impairments."). However, the

requirement that the ALJ must *consider* Plaintiff's non-severe impairments in his RFC determination does not require him to *include restrictions* in his RFC to accommodate those impairments. *See, e.g., Andrew P. v. Comm'r of Soc. Sec.*, 719 F. Supp. 3d 248, 254–55 (W.D.N.Y. 2024) (collecting cases). Where an ALJ omits mention of the non-severe impairment in his RFC determination, and it is not possible for the reviewing court to glean the rationale of the ALJ's decision, remand is required. *See, e.g., MacDonald v. Comm'r of Soc. Sec.*, No. 17-CV-921, 2019 WL 3067275, at *3 (W.D.N.Y. July 11, 2019) (quoting *Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) ("[T]he ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.'")).

Here, the Court finds that the ALJ adequately considered Plaintiff's non-severe hand and wrist impairments in formulating Plaintiff's RFC. The ALJ explained that objective evidence demonstrated intact hand and finger dexterity with full bilateral grip strength and full strength in the upper and lower extremities. AR at 20 (citing AR at 658, an October 2021 physical examination record from John Schwab, D.O.); (citing AR at 1067–68, an April 2023 physical examination record revealing good range of motion, normal wrist and hand strength, and normal sensation).

The ALJ also considered medical opinion evidence, which found that Plaintiff's alleged physical impairments, including with respect to his hands and wrists, were

9

"inconsistent with the allegations of disabling work-related functional limitations." AR at 24 (citing AR at 658, opinion from John Schwab, D.O., dated October 2021); (citing AR at 237–38, opinion from James Lawrence, M.D., dated November 10, 2021); (AR at 92–94, 791–93, opinion from Gary Ehlert, M.D., on February 10, 2022). In light of these medical opinions and the objective medical evidence, the ALJ found that Plaintiff had no significant hand and wrist restrictions. AR at 25.

Accordingly, the ALJ adequately considered Plaintiff's non-severe hand and wrist impairments and was not required to include restrictions in his RFC to accommodate those impairments. *See Andrew P.*, 719 F. Supp. 3d at 255 ("[T]he ALJ discussed Plaintiff's [non-severe impairments] at length when assessing the RFC, and it is clear to the Court how the ALJ evaluated Plaintiff's [non-severe] impairments and assessed the RFC to not include any additional limitations."). The ALJ's decision not to include any restrictions concerning Plaintiff's non-severe hand and wrist impairments is supported by substantial evidence in the form of objective medical evidence demonstrating intact hand and finger dexterity with full bilateral grip strength and medical opinion evidence indicating that Plaintiff's hand and wrist impairments are not significant. The Court denies Plaintiff's request to re-weigh the evidence with respect to his alleged hand and wrist impairments (ECF No. 4–1 at 14), as the deferential standard of review prevents the Court from reweighing evidence. *See David K. v. Comm'r*, No. 18-cv-1480, 2019 WL 7403715, at *3 (W.D.N.Y. Dec. 30, 2019).

## II. ALJ's RFC Determination

### A. *ALJ's Consideration of the Medical Opinions*

Plaintiff argues that the ALJ rejected all of the medical opinions and, therefore, improperly formulated Plaintiff's physical RFC based on his lay interpretation of the evidence. AR at 15–20. In Plaintiff's view, the ALJ "as a layperson" needed medical opinion evidence to properly assess Plaintiff's RFC and "[i]n rejecting all of the opinions, the ALJ split the difference between the opinions and engaged in an obvious picking and choosing to reject the most restrictive opinions." *Id.* at 17–19. The Court disagrees.

To be sure, "[an] ALJ cannot arbitrarily substitute [their] own judgment for competent medical opinion." *Riccobono v. Saul*, 796 F. App'x 49, 50 (2d Cir. 2020) (internal quotation marks omitted). Nevertheless, an RFC finding "is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 (2d Cir. 2024) (citing 20 C.F.R. § 404.1527(d)(2)). "Indeed, it is the very duty of the ALJ to formulate an RFC based on all relevant evidence, not just medical opinions, in Plaintiff's record." *Jennifer O. v. Comm'r of Soc. Sec.*, No. 20-cv-1474, 2022 WL 2718510, *4 (W.D.N.Y. July 13, 2022) (citing 20 C.F.R. § 404.1545(a)(1)). Where "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citations omitted); *see Matta v.*

11

*Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, in assessing Plaintiff's RFC, the ALJ considered numerous medical opinions concerning Plaintiff's physical functioning, including from consultative examiner, John Schwab, D.O. (AR at 25–26, citing AR at 656, dated 10/13/21); state agency review physician, G. Ehlert, M.D. (AR at 25–26, citing AR at 92–94, dated 2/10/22); state agency review physician, J. Lawrence, M.D. (AR at 25–26, citing 237–38, dated 11/10/21); Semira K. Khawar, M.D. (AR at 25, citing 1030–34, dated 4/6/23); and physical therapist, Joseph DiRenzio (AR at 25, citing AR at 1022, dated 1/13/23) The ALJ found that that these opinions "tilt towards both ends of the spectrum, but the opinions from most physicians offer very few restrictions." AR at 25. The ALJ explained that while the opinions of Dr. Schwab, Dr. Ehlert, and Dr. Lawrence all found no significant physical restrictions, they were "not fully persuasive" given other evidence in the record showing more significant limitations. AR at 25. However, with respect to the opinions of DiRenzio and Dr. Khawar, which assessed greater limitations, the ALJ found them to be "not persuasive" because they were inconsistent with, and not supported by, the record. AR at 25.

For example, DiRenzio performed a functional capacity evaluation of Plaintiff in January 2023 and found that Plaintiff could only lift and carry up to ten pounds, could only sit for three hours in an eight hour work day, could only stand for 30-

minutes in an eight hour work day, could only walk for 1.5 hours in an eight hour work day, and could only occasionally reach, handle, finger, push, pull, and use both feet. AR at 25 (citing AR at 1023). The ALJ reasonably found these limitations to be inconsistent with medical records showing a positive response to treatment and a greater degree of functioning. *See, e.g.*, AR at 23–24 (citing AR at 650, record from Bernhard Rohrbacher, M.D., dated 9/30/21, stating "[Plaintiff's] right ankle is stable, and he is back to skating. He rarely has any medical-sided ankle pain. He is pleased with the outcome of the surgery for his right ankle."); AR at 24 (citing AR at 1073, 1075–76, primary care note, where Plaintiff reported falling on ice around January 2023 while coaching hockey and a physical examination revealed normal extremities, a casual gait, no assistive devices, full range of motion of the spine, and normal strength).

In addition to the above referenced records showing a positive response to treatment, the ALJ also relied upon evidence from an October 2021 physical examination demonstrating intact hand and finger dexterity with full bilateral grip strength, full strength in the upper and lower extremities, no sensory deficits, a normal gait, and full musculoskeletal ranges of motion. AR at 20 (citing AR at 656–59; citing AR at 1067–68, orthopedic surgery note dated 4/11/23, stating Plaintiff reported pain following drilling a hole in a wall where the drill "grabbed and twisted his hand and thumb," but a physical examination revealed "[f]ull, painless, and symmetrical wrist and hand range of motion"; "[n]ormal wrist and hand strength in all planes.").

13

The ALJ also relied upon medical opinions finding that Plaintiff had no physical restrictions. AR at 24 (citing AR at 658, Dr. Schwab assessed no restriction based on physical examination occurring on 10/31/21; AR at 92–94, Dr. Ehlert's assessment from 2/10/22, finding Plaintiff's physical impairments not-severe; AR at 237–38, Dr. Lawrence assessing non-severe impairments on 11/10/21). While the ALJ did not find these opinions fully persuasive, he clearly found them to have some persuasive value, explaining that they were "inconsistent with the allegations of disabling work-related functional limitations." AR at 24; *see also* AR at 25 (ALJ explaining RFC based in part on the opinion of Dr. Schwab, Dr. Ehlert, and Dr. Lawrence). As the Court has previously stated, "it is simply incorrect for Plaintiff to argue that because the ALJ did not find any single medical opinion *completely* persuasive, [their] RFC opinion is unsupported by medical opinion evidence and must have resulted from [the ALJ's] own lay interpretation of raw medical data." *Willow B. v. Comm'r of Soc Sec.*, No. 20-cv-6891, 2022 WL 3209588, at *7 (W.D.N.Y. Aug. 9, 2022).

Lastly, in addition to relying on medical records and opinion evidence, the ALJ considered Plaintiff's reported activities of daily living in determining Plaintiff's RFC. AR at 25. For example, Plaintiff reported being able to clean, cook, do laundry, mow the lawn, and perform vehicle maintenance and home repairs, including using power tools. AR at 284, 1067. Plaintiff reported to camping and hiking "a lot" during the summer and coaching his daughter's hockey team. AR at 286, 866; *see also* 1072 (Plaintiff reported falling on ice while coaching hockey). Plaintiff contends that the

ALJ improperly focused on Plaintiff's reported activities of daily living to evaluate medical opinion evidence or formulate Plaintiff's RFC. ECF No.4-1 at 25–26. The Court disagrees. *See, e.g., Wilbert D. v. Comm'r of Soc. Sec.*, No. 20-cv-1318, 2022 WL 3320826, at *6 (W.D.N.Y. Aug. 11, 2022) (collecting cases); *Burch v. Comm'r of Soc. Sec.*, No. 17-cv-1252, 2019 WL 922912, at *5 (W.D.N.Y. Feb. 26, 2019) ("Any suggestion by [the plaintiff] that the ALJ should not have considered his daily activities in formulating the RFC is incorrect.").

In sum, the ALJ reasonably weighed conflicting evidence and crafted an RFC that was supported by "more than a mere scintilla" of evidence. *Biestek*, 587 U.S. at 103; *see also Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ("[T]he ALJ's RFC conclusion need not perfectly match any single opinion in the record, so long as it is supported by substantial evidence."); *Barry J. v. Comm'r of Soc. Sec.*, 725 F. Supp. 3d 312, 324 (W.D.N.Y. 2024) ("[T]he ALJ considered the multiple medical opinions in conjunction with the other evidence in the record, including Plaintiff's reports of his functioning, in assessing the RFC, and the ALJ adequately explained how he incorporated these limitations into the RFC."). Plaintiff "had a duty to prove a more restrictive RFC, and failed to do so." *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

B. *ALJ's Alleged Failure to Perform a Function-by-Function Analysis*

The Court rejects Plaintiff's contention that the ALJ erred by failing to perform a function-by-function analysis of how he arrived at the specific limitations in the RFC after rejecting all of the medical opinions in the record. ECF No. 4-1 at 20.

15

Setting aside the fact that the ALJ considered and relied upon medical opinions to formulate Plaintiff's RFC, as discussed above, "the Second Circuit has found, 'remand is not necessary merely because an explicit function-by-function analysis was not performed.'" *Richard R. v. Comm'r of Soc. Sec.*, No. 23-cv-6346, 2024 WL 4064084, at *4 (W.D.N.Y. Sept. 5, 2024) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013); *see, e.g., Fabian E. v. Comm'r of Soc. Sec.*, No. 21-cv-187, 2023 WL 5843529, (W.D.N.Y. Sept. 11, 2023) (rejecting plaintiff's argument that the ALJ improperly failed to engage in a function-by-function assessment since the Second Circuit in *Cichocki* held that such failure is not a *per se* error requiring remand); *James R. v. Kijakazi*, No. 21-cv-1153, 2023 WL 5541798, at *6 (W.D.N.Y. Aug. 29, 2023) ("Nor is an ALJ required to perform an explicit function-by-function analysis before determining a claimant's RFC")). Rather, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Fabian E.*, 2023 WL 5843529, at *5 (citing *Cichocki*, 729 F.3d at 177). As discussed above, the ALJ applied the correct legal standards, and his RFC determination is supported by substantial evidence.

C. *Assessment of Functional Capacity Evaluation*

Lastly, Plaintiff contends that the ALJ's decision to reject the findings in a Functional Capacity Evaluation ("FCE") report prepared by Joseph DiRenzio, a physical therapist, was improper, internally inconsistent, and inaccurate. ECF No. 4–1 at 23–24. According to Plaintiff, this error was harmful since the FCE supported work-preclusive restrictions. *Id.* Commissioner responds that the ALJ properly

16

assessed the DiRenzio's report and found it unpersuasive. ECF No. 6–1 at 15–17. The Court agrees with the Commissioner.

On January 13, 2023, Plaintiff underwent a functional capacity evaluation with Joseph DiRenzio. AR at 1022–24. DiRenzio listed the following objective results from the FCE:

> [Plaintiff] is able to less than occasionally lift and carry up to 10lbs.[ ] [Plaintiff] should be able to sit for approximately 15 minute at any single time and sit for a total of 3 hours in a[n] 8hr work day. [Plaintiff] should be able to stand for approximately 5 minutes at any single time and stand for a total of 30 minutes in a[n] 8hr. work day. [Plaintiff] should be able to walk for approximately 15 minutes at any single time and walk for a total of 1.5 hours in an 8hr. work day. [Plaintiff] does not require use of a cane to ambulate though occasionally he does use a walking stick when his pain is worse. He is able to occasionally reach overhead and use his hands for handling, fingering, feeling, pushing or pulling . . . He should be able to occasionally use both feet secondary to ankle pain. [Plaintiff] is able to occasionally climb stairs and ramps. Unable to climb ladders or scaffolds safely. He demonstrates fair balance. He is unable to stoop, kneel, crouch or crawl. Patient is able to shop, ambulate independnetly [sic] without an assistive device, walk a block at a reasonable pace, use public transportation, prepare a simple meal, perform personal hygiene and sort, handle and use paper files.

The ALJ found the opinion to be unpersuasive, explaining:

> The undersigned finds that the January 2023 FCE report is not persuasive because it is not consistent with the overall medical evidence showing a good response to treatment, as discussed above, because it is based on a physical therapist's one-hour testing, and because it is internally inconsistent, as the physical therapist then goes on to indicate that the claimant "is able to shop, ambulate independently without an assistive device, walk a block at a reasonable pace, use public transportation, prepare a simple meal, care for personal hygiene, and sort, handle, and use paper files."

AR at 25.

Plaintiff argues that the ALJ's analysis was internally inconsistent because

17

the ALJ discredited DiRenzio's opinion since it was based on only one-hour of testing, but did not discredit other opinions for similar reasons. ECF No. 4–1 at 24. However, Plaintiff fails to observe that the ALJ provided additional grounds for finding the opinion unpersuasive, such as being inconsistent with the other record evidence. Indeed, while the report claimed that Plaintiff could only lift or carry up to ten pounds, other medical records reflect that Plaintiff retained full strength. *See, e.g.*, AR at 658 (internal medicine examination dated 10/13/21, "[h]and and finger dexterity intact. Grip strength 5/5 bilaterally"), AR at 1068 (orthopedic surgery note dated 5/16/23, finding "normal wrist and hand strength in all planes"). Additionally, DiRenzio provided no supporting explanations for his findings. *See* 20 C.F.R. § 404.1520c(c)(1) (explaining that "supportability" refers to the relevance of the "objective medical evidence and supporting explanations presented by a medical source"). Accordingly, the ALJ reasonably found DiRenzio's FCE report to be not persuasive.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings [ECF No. 4] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 6] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:   March 31, 2025
         Rochester, New York

_____
HON. MEREDITH A. VACCA
United States District Judge